**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

DONALD W. TOENNIGES,       :
                                          :
      Plaintiff,            :
                                          :
v.                                    :     CASE NO.: 1:09-CV-165 (WLS)
                                        :
WARDEN AMMONS, *et al.*,     :
                                        :
      Defendants.        :
_____:

**ORDER**

     Presently pending before the Court is an Order and Recommendation from United States Magistrate Judge Thomas Q. Langstaff filed April 10, 2013. (Doc. 117.) Pursuant to 28 U.S.C. § 1915A, Judge Langstaff conducted a review of Plaintiff's Amended Complaint, which alleged violations of 42 U.S.C. § 1983. (Doc. 20-1.) No objections have been filed to the Recommendation currently under review. (*See generally* Docket.) Due to the lengthy and involved nature of Plaintiff's Amended Complaint (Docs. 20-1 & 115), and to ensure that all of his claims have been addressed, the Court addresses his allegations in turn and uses the headings used by Plaintiff in his Amended Complaint (Doc. 20-1).

**ANALYSIS**

**I.**  **Ground One: Cruel and Unusual Punishment**

     **A.  Denial of medical treatment**

     Plaintiff alleges that he had an appointment with Defendant Saad on January 20, 2006, but was not allowed to speak. (Doc. 20-1 at 10.) He filed informal and formal grievances based on his encounter with Defendant Saad, but both were denied by

Defendant Nelson.  (*Id.*)  Plaintiff filed an appeal, which was denied on February 14, 2007 by Defendant Sittnick.  (*Id.* at 10-11.)  Following visits with Dr. Gardner and a radiologist, Emory Sports Medicine made a recommendation that Plaintiff have surgery. (*Id.* at 11.)  On February 22, 2009, Plaintiff requested replacement shoes, but that request was denied.  (*Id.* at 12.)  Plaintiff asserts that he also requested evaluations from physicians and chiropractors, and offered to pay for such evaluations himself, but those requests were denied by Defendant Ayers.  (*Id.*)  Plaintiff claims that this alleged denial of medical treatment has resulted in ongoing pain, decreased quality of life, and a diminished capacity to produce income.  (*Id.*)

The Court construes the above-referenced allegations to be (1) a claim against Defendant Saad for medical malpractice, negligence, or deliberate indifference, (2) claims against Defendants Nelson and Sittnick for hindering the grievance process, (3) a claim against Defendant Ayers for failure to respond to a letter, and (4) a claim against Defendant Ayers for failure to render adequate medical care.

Judge Langstaff recommends dismissing Plaintiff's claim against Defendant Saad because the applicable statute of limitations has passed.  (Doc. 117 at 2.)  The Court agrees.  *See Acoff v. Abston*, 762 F.2d 1543, 1546 (11th Cir. 1985); GA. CODE ANN. § 9-3-33.  Because this is the only claim against Defendant Saad, Defendant Saad is **DISMISSED**.

Judge Langstaff recommends dismissing the claims against Defendants Nelson, Sittnick, and Ayers as they relate to the grievance process and failure to respond to letters.  (Doc. 117 at 4.)  The Court agrees because such claims are not actionable. *See Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) ("[A] prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure.");

*Wildberger v. Bracknell*, 869 F.2d 1467 (11th Cir. 1989) (per curiam) (holding that a prison's failure to follow grievance procedures is not actionable).   Accordingly, the above-referenced claims against Defendants Nelson, Sittnick, and Ayers are **DISMISSED.**

The Court notes that Plaintiff may have intended to assert a claim against Defendant Ayers for denial of medical care.  In relation to the above-referenced claim, Plaintiff does not allege that Defendant Ayers acted with deliberate indifference. Because negligence and medical malpractice, without more, is not actionable under § 1983, *see Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006), the claim against Defendant Ayers for denial of medical care is **DISMISSED.**

### B. Delay of medical treatment

#### i.   Issues with shoulders

On February 7, 2008, Plaintiff claims that he visited with Defendant Smith in reference to ongoing pain, but there were no changes to his medical treatment.  (Doc. 20-1 at 13.)  Plaintiff wrote a letter to Defendant Cross on December 17, 2008, seeking help for his medical issues but received no response.  (*Id.*)  On the same date, Plaintiff filed "sick call" concerning his loss of the use of his right shoulder, and Defendant Brown ordered a new shoulder x-ray.  (*Id.*)  As a result of the x-ray, Plaintiff was sent to an orthopedic surgeon, Dr. Baggett.  (*Id.*)  Dr. Baggett ordered an MRI of Plaintiff's right shoulder.  (*Id.*)  After review of the MRI results, Dr. Baggett ordered an MRI of Plaintiff's left shoulder and referred Plaintiff to a shoulder replacement doctor for consultation regarding Plaintiff's right shoulder.  (*Id.*)  Plaintiff claims that the MRI of his left shoulder was never conducted.  (*Id.*)

On September 28, 2009, Plaintiff saw an orthopedic specialist, Dr. Keating, in Atlanta. (*Id.*) Dr. Keating told Plaintiff that his options were shoulder reconstruction or replacement. (*Id.*) Dr. Keating said that he would have to speak with Calhoun State Prison to determine the course of action. (*Id.*) On October 5, 2009, Plaintiff spoke with Defendant Edwards, and asserted his desire to have surgery. (*Id.* at 14.) Plaintiff claims that Defendant Edwards told him that only one medical operation could be done at a time. (*Id.*) On October 27, 2009, Plaintiff had a consultation with P.A. Tatum who conducted "the most rigorous exam [Plaintiff] has had since his incarceration." (*Id.*)

The Court construes the above-referenced allegations to be (1) a claim against Defendant Smith for deliberate indifference, (2) a claim against Defendant Edwards for failure to render adequate medical care, and (3) a claim against Defendant Cross for failure to respond to a letter.

The claim referenced above against Defendant Edwards does not allege any degree of fault or state of mind attributable to Defendant Edwards. Accordingly, Plaintiff has failed to state a claim against Defendant Edwards and that claim is **DISMISSED.** *See Simpson*, 200 F. App'x at 839. Judge Langstaff recommends dismissing Plaintiff's claim against Defendant Cross for failure to respond to a letter. (Doc. 117 at 4.) The Court agrees and that claim is **DISMISSED.** *See Wildberger*, 869 F.2d 1467. The Court agrees with Judge Langstaff that the deliberate indifference claim against Defendant Smith should be permitted to proceed.

### ii.   Issues with replacement shoes

In March 2008, the specially-made shoes that Plaintiff had been wearing for two weeks began to come apart. (Doc. 20-1 at 14.) Plaintiff wrote a letter to Defendant Hutto, who forwarded the letter to Defendant Jones. (*Id.* at 14-15.) Plaintiff never

received a response. (*Id.* at 15.) Plaintiff claims that the shoes became a tripping hazard, and he was shipped to Calhoun State Prison on July 31, 2008, without replacement shoes. (*Id.*)

On September 8, 2008, Defendant Edwards noted Plaintiff's worn shoes and requested a replacement. (*Id.*) After Plaintiff did not receive the shoes, he wrote a letter to Defendant Thompson but received no response. (*Id.*) On December 17, 2008, Plaintiff wrote a letter to Defendant Cross regarding his letter to Defendant Thompson, but received no response. (*Id.*) On the same date, Plaintiff filed his fourth "sick call" for shoes but was told that shoes must last one year. (*Id.*) Plaintiff noted that a request for replacement shoes had previously been denied by Defendant Christian. (*Id.*) On February 22, 2009, Plaintiff filed "sick call" for shoes since it had been thirteen months since he received the pair of shoes he had at that time. (*Id.*) Plaintiff was told by Defendant Brown that the request was denied. (*Id.* at 16.) Plaintiff alleges that his grievances on this matter were denied. (*Id.*) Plaintiff received the replacement shoes in June 2009. (*Id.*) Plaintiff claims that, but for the negligence and delay caused by Defendants Satterfield and the Medical College of Georgia, he would have received replacement shoes. (*Id.*)

The Court construes the above-referenced allegations to be (1) a claim against Defendant Hutto for failure to respond to a letter, (2) a claim that Plaintiff was wrongfully transferred to Calhoun State Prison, (3) a claim against Defendant Thompson for failure to respond to a letter, (4) a claim against Defendant Cross for failure to respond to a letter, (5) a claim against Defendant Christian for denying his request for replacement shoes, (6) a claim against Defendant Brown for denying a grievance related to his request for replacement shoes, (7) a claim against Defendant

Satterfield for deliberate indifference, and (8) a claim against the Medical College of Georgia.

To the extent Plaintiff seeks to assert claims against Defendants Hutto, Thompson, Cross, Christian, and Brown for failure to respond to his letters or properly process his grievances, the Court agrees with Judge Langstaff's recommendation (Doc. 117 at 4) and those claims are **DISMISSED.**   *See Wildberger*, 869 F.2d 1467.   The Court also agrees with Judge Langstaff's recommendation to dismiss the Medical College of Georgia because that entity is not capable of being sued.   *See Gunn v. Jarriel*, No. CV 306-039, 2007 WL 2317384, *4 (S.D. Ga. Aug. 10, 2007).   Accordingly, Plaintiff's claim against the Medical College of Georgia is **DISMISSED** and the Medical College of Georgia is **DISMISSED.**

To the extent Plaintiff seeks to assert claims against Defendant Christian for denial of replacement shoes on the basis of the above-referenced facts, that claim is **DISMISSED**.  Plaintiff alleges that Defendant Christian denied him replacement shoes and stated "there were no problems."  (Doc. 20-1 at 15.)  Because Plaintiff failed to allege that Defendant Christian acted with the requisite state of mind, he has not properly stated a claim.  *See Simpson*, 200 F. App'x at 839.  To the extent Plaintiff seeks to assert a claim based on being transferred to Calhoun State Prison wrongfully or improperly, such a claim is **DISMISSED** because it is not actionable.  *See Meachcum v. Fano*, 427 U.S. 215, 223-24 (1976).  The Court agrees with Judge Langstaff that the claim against Defendant Satterfield for deliberate indifference should be permitted to proceed.

### C.  Medical Negligence

Plaintiff claims that Defendant Smith's negligence resulted in the delay of his medical treatment by three and one-half years.  (*Id.* at 16-17.)  On December 17, 2009,

Plaintiff claims that he filed "sick call" regarding a change in the condition of his right shoulder and arm, but was ignored by Defendant Brown.  (*Id.* at 17.)  Plaintiff alleges that Defendant Brown refused to request an x-ray on his shoulder.  (*Id.*)  Plaintiff asserts that he was not properly treated until he saw Dr. Baggett.  (*Id.*)  Plaintiff claims that Defendant Brown had acted similarly during a physical exam on June 30, 2009, and refused to review Plaintiff's health survey.  (*Id.*)

The Court construes these allegations to assert claims against Defendants Smith and Nurse Brown for medical negligence.  To the extent that Plaintiff asserts claims of medical negligence against Defendants Smith or Nurse Brown, those claims are **DISMISSED** because a negligence claim, without more, is not actionable under § 1983. *See Simpson*, 200 F. App'x at 839.

### D. Deliberate Indifference[1]

On March 16, 2008, Plaintiff wrote a letter to Defendant Hutto regarding the deteriorating condition of his new shoes.  (Doc. 20-1 at 18.)  Although Defendant Hutto forwarded the letter to Defendant Jones, Plaintiff received no response.  (*Id.*)  On June 29, 2009, Plaintiff visited with Defendant Brown, and Plaintiff claims that his concerns regarding his medical condition were ignored.  (*Id.*)  On July 12, 2009, Plaintiff requested "bed rest profile," but the request was ignored.  (*Id.* at 19.)  On July 14, 2009, Plaintiff requested to be evaluated by his doctors and volunteered to pay for it, but that request was denied.  (*Id.*)  On that same date, Plaintiff requested chiropractic care, but that request was denied.  (*Id.*)  On July 24, 2009, Plaintiff wrote Defendant Ayers a letter raising concerns regarding the medical treatment he was receiving, but the letter was returned because Plaintiff had not followed the proper procedural avenue.  (*Id.*)

---

[1] The Court notes that many of the allegations set forth under this heading were previously alleged by Plaintiff.  The Court discusses them to ensure that all of Plaintiff's claims have been addressed.

On August 11 and 17, 2009, Plaintiff sent letters to Defendant Ayers, but never received a response. (*Id.*) Plaintiff asked Defendant Edwards if Defendant Ayers had received the letter, but Plaintiff was allegedly told to ask Defendant Ayers himself. (*Id.*) Plaintiff claims that it took three years for the first x-ray to be conducted. (*Id.* at 20.) Plaintiff claims that this is due, at least in part, to the negligence of the Medical College of Georgia and Defendant Brown. (*Id.*)

On October 27, 2009, Plaintiff alleges that P.A. Tatum at Coffee Correctional Facility had him shipped back to Johnson State Prison. (*Id.* at 21.) On November 14, 2009, Plaintiff had an appointment with Defendant Henderson. (*Id.*) Defendant Henderson disagreed with the notes and orders by Dr. Keating. (*Id.*) On November 19, 2009, Plaintiff was evaluated by Dr. Martel of the Medical College of Georgia. (*Id.* at 22.) At that time, Dr. Martel told Plaintiff to continue with physical therapy. (*Id.*) On December 6, 2009, Plaintiff wrote Defendant Henderson a letter regarding physical therapy, but Plaintiff received no response. (*Id.*)

The Court construes the above-referenced allegations to constitute (1) a claim against Defendant Hutto for failure to respond to a letter, (2) a claim against Defendant Jones for failing to respond to a letter, (3) a claim against Defendant Brown for deliberate indifference, (4) a claim that his request for a "bed rest profile" was wrongfully denied, (5) a claim that his request to be evaluated by his doctors was wrongfully denied, (6) claims against Defendant Ayers for failure to respond to letters, (7) a claim against Defendant Edwards for failure to respond to a letter, (8) a claim against the Medical College of Georgia and Defendant Brown for negligence, (9) a claim that he was wrongfully transferred to Johnson State Prison, (10) a claim against

8

Defendant Henderson for deliberate indifference, and (11) a claim against Defendant Henderson for failure to respond to a letter.

Judge Langstaff recommends dismissal of Plaintiff's claims against Defendants Hutto, Jones, Ayers, Edwards, and Henderson for failure to respond to letters and facilitate the grievance process. (Doc. 117 at 4-5.) The Court agrees and those claims are **DISMISSED.** *See Wildberger*, 869 F.2d 1467. Because no further claims remain against Defendant Ayers, Defendant Ayers is **DISMISSED.** Plaintiff's claims related to the denial of his requests for a "bed rest profile" and evaluations by his own doctors are also **DISMISSED** for failure to state a claim. As to those claims, Plaintiff failed to allege that those requests were denied with the requisite mental state, or that such denials resulted in actual injury. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For the reasons stated previously, Plaintiff's claims related to the alleged negligence of the Medical College of Georgia and Defendant Brown and his transfer to Johnson State Prison are **DISMISSED** as none of those allegations are actionable. The Court agrees with Judge Langstaff's recommendation that the claims against Defendants Brown and Henderson for deliberate indifference should be permitted to proceed. (Doc. 117 at 16.)

### E. Denial of Visitation

In February 2006, Plaintiff claims that he was not allowed to visit with his family. (Doc. 20-1 at 23.) Plaintiff wrote a letter to Defendant Nobles, who informed him that certain family members were not on the list of approved visitors. (*Id.*) On the next visit, his children were not allowed to visit. (*Id.*) In September or October of 2006, Plaintiff's daughter and grandson were not allowed to visit. (*Id.*) Defendant Nobles told Plaintiff that his children should never have been on the list due to the crime for which he was incarcerated, and that he could not visit with them without a court order. (*Id.*) Plaintiff

caused his divorce decree to be sent to Defendant Keith Jones.  (*Id.* at 23-24.)  However, on February 22, 2008, Defendant Keith Jones told Plaintiff that the decree was insufficient documentation.  (*Id.* at 24.)  Plaintiff replied to Defendant Keith Jones, but Plaintiff never received a response.  (*Id.*)  Plaintiff claims that the problem continued until July 2009, and "Ms. D. Edwards continued that stance."  (*Id.*)  On December 6, 2009, Plaintiff wrote another letter to Defendant Keith Jones but received no response.  (*Id.* at 24-25.)   On January 3, 2009, Plaintiff wrote a letter to the new warden, Defendant Morales, but received no response.  (*Id.* at 25.)

The Court construes the above-referenced allegations to constitute (1) a claim against Defendant Nobles for wrongfully failing to permit visitation, (2) a claim against Defendant Keith Jones for wrongfully failing to permit visitation, (3) claims against Defendant Keith Jones for failing to respond to letters, (4) a claim against Defendant Edwards for wrongfully failing to permit visitation, and (5) a claim against Defendant Morales for failure to respond to a letter.

Judge Langstaff recommends dismissal of Plaintiff's claim against Defendant Nobles because the applicable statute of limitations has run.  (Doc. 117 at 2.)  The Court agrees.  Because this is the only claim asserted against Defendant Nobles, she is **DISMISSED.**  To the extent Plaintiff seeks to assert claims against Defendants Jones, Edwards, and Morales for failing to respond to letters, the Court agrees with Judge Langstaff's recommendation (Doc. 117 at 4-5) and those claims are **DISMISSED.**  *See Wildberger*, 869 F.2d 1467.  Judge Langstaff recommends that the claims against Defendants Keith Jones and Edwards be permitted to proceed.  (*Id.* at 13.)  The Court agrees because it is conceivable, although by no means certain, that Plaintiff had a

liberty interest in visitation. *See Carabello-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir. 1994).

### F. Overcrowding

Plaintiff claims that, during the summer of 2008, Defendants Donaldson and Owens began "triple bunking" certain rooms in the "D building." (*Id.*) Plaintiff alleges that three inmates were housed in 96 square foot rooms. (Doc. 20-1 at 25.) Plaintiff claims that a new dormitory was constructed in 2007, and there has been a 30% increase in the inmate population without corresponding accommodations to living space. (*Id.*)

Plaintiff claims that, due to the overcrowding, inmates are allowed an average of seven minutes to eat meals. (*Id.* at 26.) Plaintiff asserts that another inmate filed a grievance, but was told by Defendant Edwards that there is no policy concerning eating times but Defendant Morales would nonetheless address the issue. (*Id.*) Plaintiff claims that the problem was not addressed. (*Id.*) Also, Plaintiff alleges that lunch is not served Friday through Sunday, and the food is often burned and inedible. (*Id.*) Plaintiff claims that the Georgia Parole Board, "by abusing its broad discretionary powers[] by holding prisoners who have served their grid time, simply aggravates the overcrowded and stressed environment." (*Id.*) Plaintiff also alleges that the laundry is often returned soiled and wet. (*Id.*) Plaintiff claims that the library is overcrowded and noisy such that legal research is not possible. (*Id.* at 26-27.)

The Court construes the above-referenced allegations to assert (1) claims against Defendants Donaldson and Owens related to prison conditions, (2) a claim that the amount of time permitted for eating is unconstitutionally short in duration, (3) claims against Defendants Edwards and Morales for failure to facilitate the grievance process,

(4) a claim related to the prison's failure to serve lunch Friday through Sunday, (5) a claim related to the prison serving burned and inedible food, (6) a claim against the Georgia Parole Board for not observing the "grid," (7) a claim related to the laundry being returned soiled and wet, and (8) a claim related to the law library conditions.

"No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' " *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Prisons need not be comfortable places, but they must be humane. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). For prison conditions to be violative of the Eighth Amendment, they must be "sufficiently serious" and the officials involved must have acted with "deliberate indifference to prisoner health or safety." *Collins v. Homestead Correctional Inst.*, 452 F. App'x 848, 850 (11th Cir.) (citation omitted).

Judge Langstaff recommends that the claims against Defendants Donaldson and Owens be dismissed because Plaintiff failed to allege that they had personal knowledge of the prison conditions. (Doc. 117 at 8.) The Court agrees. The claims against Defendants Donaldson and Owens are therefore **DISMISSED** and Defendant Donaldson is **DISMISSED** because no other claims remain against him. To the extent Plaintiff seeks to assert an overcrowding claim, the Court agrees with Judge Langstaff that Plaintiff has failed to state a claim. (*Id.*) Short meal periods, skipped meals, unpalatable meals, subpar laundry service, and a loud library, without more, do not constitute a violation of the Eighth Amendment. *See Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004). Because Plaintiff has failed to allege that any of these conditions at the prison caused him actual harm, Plaintiff's claims related to short meal

periods, the prison's failure to serve lunch several days each week, burned and inedible meals, laundry, and the insufficiency of the library are **DISMISSED.** *See Hudson*, 503 U.S. at 8-9 (noting that prison condition claims that do not allege actual injury fail to state a claim); *Cline v. Tolliver*, 434 F. App'x 823, 824-25 (11th Cir. 2011) (noting that access to the courts claims that do not allege actual injury fail to state a claim).

For the reasons discussed previously, Plaintiff's claims against Defendants Edwards and Morales for failure to respond to his letters are **DISMISSED.**  Likewise, Plaintiff's claim against the Georgia Parole Board is **DISMISSED.**  *See Fuller v. Ga. State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1309 (11th Cir. 1988) (noting that Georgia Parole Board is incapable of being sued).

### G. Retaliation

On January 11, 2008, Plaintiff claims that Defendant Johnson told him and his bunkmate, "I will get the dorm to punish you." (Doc. 20-1 at 27.)  Defendant Johnson allegedly began throwing Plaintiff's belongings from his locker onto the bed, and said to expect "a repeat performance at 3:00 a.m." (*Id.*)  Plaintiff claims that Defendant Johnson did the same thing at 3:00 a.m. (*Id.*)  Defendant Johnson told Plaintiff that he was going to return in 15 minutes "to hit 4 more boxes ... knowing those were the boxes of known gang members." (*Id.*)  Plaintiff alleges that, once Defendant Johnson left, those gang members walked into his cell and demanded that he leave. (*Id.*)

Plaintiff claims that Lieutenant Delrosi came to the building and was informed of what had happened. (*Id.* at 27-28.)  Plaintiff asserts that Lieutenant Delrosi reprimanded Defendant Johnson as a result. (*Id.* at 28.)  Because no other beds were available, Plaintiff and his bunkmate were taken "to the showers in segregation to sleep on the floor without mattresses." (*Id.*)  Plaintiff was returned to "same building,

different pod," and was "not allow[ed] to unpack [until the other inmates] gather[ed] the real situation and let Plaintiff settle." (*Id.*) Plaintiff asserts that he filed an informal grievance against Defendant Johnson on January 16, 2008, which was denied by Defendants Ammons and Allen on January 27, 2008. (*Id.*) Plaintiff alleges that he filed an appeal on February 21, 2008. (*Id.*) The appeal was denied on April 7, 2008, because Plaintiff failed to provide any evidence. (*Id.*)

On August 28, 2009, during supper, Defendant Tarver[2] instructed Plaintiff to leave. (*Id.*) Plaintiff looked at his watch to confirm that only a short period of time had passed, and Defendant Tarver slammed his hands on the table, yelled at Plaintiff, and instructed Plaintiff to finish his meal in a corner. (*Id.* at 28-29.) Plaintiff claims that he filed a "grievance on the retaliation and eating time problem," but "the camp defaulted in their response time." (*Id.* at 29.) Plaintiff claims that Defendant Morales fabricated log sheets that were prepared to track times given for eating. (*Id.*) On September 13 and 20, 2009, Plaintiff wrote Defendant Henderson and asked for paperwork for an appeal. (*Id.*) Plaintiff did not receive a response. (*Id.*)

On September 28, 2009, Plaintiff was taken to Atlanta for a medical appointment by Defendant Clyde. (*Id.*) He was not returned to Calhoun State Prison until 2:30 a.m. on September 29, 2009, and had not been permitted to eat since 5:30 p.m. on September 27, 2009. (*See id.*) Plaintiff wrote Defendants Tatum, Perdue, Baker, and Owens, but did not receive a response. (*Id.* at 30.) On October 1, 2009, Plaintiff filed an informal grievance but "[t]he camp defaulted." (*Id.*)

---

[2] Although Plaintiff named this Defendant as Defendant Talbert, Defendant Tarver responded. Judge Langstaff found that Plaintiff intended to name Defendant Tarver, not Defendant Talbert. (*See* Doc. 117 at 14 n. 3.)

Plaintiff was told by Defendant Tillman that he could not photograph his shoes. (*Id.*)  On October 4, 2009, Plaintiff wrote a letter to Defendant Tatum asking for the ability to photograph his shoes, but did not receive a reply.  (*Id.*)  Plaintiff wrote another letter on October 6, 2009, "to explain the reasons [Plaintiff] had made his request in his prior letter [and] was shipped the following day."  (*Id.*)  Plaintiff claims that these actions by Defendant Tatum constituted retaliation.  (*Id.*)

The Court construes the above-referenced allegations to assert (1) a claim against Defendant Johnson for retaliation, (2) claims against Defendants Ammons and Allen for denial of grievances, (3) a claim against Defendant Tarver for retaliation, (4) a claim against Defendant Morales for fabricating log sheets, (5) a claim against Defendant Henderson for failing to facilitate the grievance process, (6) a claim against Defendant Clyde for failing to provide Plaintiff with food September 27-29, 2009, (7) claims against Defendants Tatum, Perdue, Baker, and Owens for failure to respond to letters, (8) Defendant Tillman for failure to permit Plaintiff to photograph his shoes, and (9) a claim against Defendant Tatum for retaliation.

Judge Langstaff recommends dismissal of Plaintiff's claims against Defendants Ammons, Allen, Henderson, Tatum, Perdue, Baker, and Owens for failing to respond to his letters and failing to facilitate the proper grievance process.  (Doc. 117 at 4-5.)  The Court agrees and those claims are **DISMISSED** because they are not actionable. Because no further claims remain against Defendants Ammons, Allen, Perdue, Baker, and Owens, those Defendants are **DISMISSED.**

To the extent Plaintiff seeks to assert claims against Defendants Morales, Clyde, and Tillman, those claims are **DISMISSED.**  The allegations against those Defendants do not state a claim because Plaintiff failed to allege that he was harmed.  *See Harris v.*

*McKinnley*, No. 5:06-CV-238, 2007 WL 114082 (M.D. Ga. Jan. 10, 2007) (finding that isolated incidents of deprivation of food do not give rise to a § 1983 claim). Because no other claims remain against Defendants Clyde, he is **DISMISSED.** The Court agrees with Judge Langstaff's recommendation that the retaliation claim against Defendants Johnson, Tarver, and Tatum should be permitted to proceed. (Doc. 117 at 14.)

## II. Ground Two: Denial of Due Process

### A. Denial of parole

Plaintiff claims the Georgia Department of Pardons and Parole "abandoned the grid" and gave Plaintiff a parole date 32 months longer than the maximum that his score required. (*Id.* at 31.) Plaintiff claims that the Georgia Department of Corrections prejudiced him by not housing him at a prison that offered the classes necessary for an inmate to be granted parole. (*Id.*) Plaintiff argues that the Board violated his due process rights when it did not grant him parole after he met the criteria. (*Id.* at 34.)

The Court agrees with Judge Langstaff that these claims are not actionable because there is no cognizable right to parole. *See Sultenfuss v. Snow*, 35 F.3d 1494, 1501 (11th Cir. 1994) (finding that the Georgia parole system leaves Parole Board with significant amount of discretion and therefore prisoners do not have a liberty interest in parole). Accordingly, Plaintiff's denial of parole claim is **DISMISSED.** Thus, the Georgia Parole Board is **DISMISSED.** Because Plaintiff has not alleged that Defendants Buckner, Keller, Hammonds, Nix, and Hunt have engaged in any wrongdoing, those Defendants are **DISMISSED.**

### B. Withholding exhibits and case law

Plaintiff claims that his family mailed him cases and exhibits to assist him in preparing for his habeas case that had to be filed by June 15, 2009. (*Id.*) Plaintiff was

told that any envelope with more than 25 pages was required to "go through legal mail." (*Id.*)  Plaintiff successfully received mail without incident January 21, 2009 and March 26, 2009.  (*Id.* at 35.)  On March 16, 2009, however, the mail staff at the prison where Plaintiff was housed denied Plaintiff access to his mail.  (*Id.*)  Plaintiff claims that Defendant Morales discovered the material and asked Defendant Edwards to review it. (*Id.*)  On April 18, 2009, Plaintiff met with Defendant Thompson to discuss his mail, and was told about the investigation of the material.  (*Id.*)  On May 13, 2009, Plaintiff filed an emergency grievance to gain access to the case law and exhibits, but it was denied by Defendants Tillman and Cross.  (*Id.* at 36.)  On May 19, 2009, Plaintiff filed another emergency grievance, and it was denied by Defendant Christian who asserted that there was no emergency.  (*Id.*)

On June 2, 2009, Plaintiff wrote Defendant Edwards regarding the mail.  (*Id.*) On June 3, 2009, Defendant Morales told Plaintiff that the case law was contraband and Plaintiff could only get research materials from the law library.  (*Id.* at 37.)  Although Defendant Morales told Plaintiff that they could speak about it more the following day, that meeting did not take place.  (*Id.*)  On June 6, 2009, Plaintiff wrote Defendant Morales another letter, but received no response.  (*Id.*)  On July 15, 2009, Plaintiff wrote a letter to the new warden, Defendant Tatum, and Defendant Morales.  (*Id.*)  Defendant Tatum responded on July 27, 2009, and agreed with Defendant Thompson's policy. (*Id.*)  The appeal was denied by Defendant Sittnick on September 21, 2009.  (*Id.*)

The Court construes the above allegations as intended assertions of (1) claims against Defendants Morales and Edwards for wrongfully refusing to allow Plaintiff access to his mail, (2) a claim against Defendant Thompson for failure to properly address his grievance, (3) claims against Defendants Tillman and Cross for denying a

grievance, (4) a claim against Defendant Christian for denial of a grievance, (5) a claim against Defendants Morales and Edwards for failing to respond to letters, (6) a claim against Defendant Tatum for wrongfully refusing to allow Plaintiff access to his mail, and (7) a claim against Defendant Sittnick for denial of an appeal.

Plaintiff's claims against Defendants Morales, Edwards, and Tatum amount to claims of denial of access to the courts because the materials at issue were legal mail allegedly intended to aid Plaintiff in a court proceeding. However, Plaintiff fails to state a claim because he did not allege that he suffered an actual injury due to the actions of those Defendants. *See Cline v. Tolliver*, 434 F. App'x 823, 824-25 (11th Cir. 2011) (noting that access to the courts claims that do not allege actual injury fail to state a claim). Accordingly, those claims are **DISMISSED**.

Also, Judge Langstaff recommends dismissal of Plaintiff's above-referenced claims against Defendants Thompson, Tillman, Cross, Christian, Morales, Edwards, and Sittnick because claims related to the grievance process are not actionable. (Doc. 117 at 4-5.) The Court agrees and those claims are **DISMISSED.** Because no further claims remain against Defendants Thompson, Morales, Cross, and Christian, those Defendants are **DISMISSED.**

### C. Holding mail, delaying mail

On April 29, 2009, Plaintiff left an envelope with Defendant Jackson to mail to his mother. (*Id.* at 38-39.) After a few days, Plaintiff called his mother to see if she received the package. (*Id.* at 39.) Plaintiff's mother had not yet received the package, and called the post office. (*Id.*) The post office told her that they had not received the package from the prison. (*Id.*) On May 6, 2009, Plaintiff wrote a letter to the mailroom to check on the status of the delivery. (*Id.*) On May 11, 2009, Mrs. Favors told Plaintiff

that the package was sent earlier that morning.  (*Id.*)  On May 12, 2009, Plaintiff filed an informal grievance requesting that mail personnel be trained properly.  (*Id.*)  Defendant Hatcher denied the grievance.  (*Id.*)  On May 25, 2009, Plaintiff filed a formal grievance, which was also denied.  (*Id.*)  Plaintiff's appeal, which was filed on July 15, 2009, was denied by Defendant Sittnick on September 21, 2009.  (*Id.* at 40.)

The Court construes the above allegations to assert (1) a claim against Defendant Jackson for failing to deliver legal mail, (2) Defendant Hatcher for denying a grievance, and (3) Defendant Sittnick for denying an appeal.  Plaintiff's claims against Defendants Hatcher and Sittnick fail to state a claim because claims related to the grievance process are not actionable.  Thus, those claims are **DISMISSED.**  Because no other claims remain against Defendant Hatcher, Defendant Hatcher is **DISMISSED.**  Because Plaintiff has not alleged any actual injury, his claim regarding Defendant Jackson's interference with his legal mail is **DISMISSED** for failure to state a claim**.** *See Cline*, 434 F. App'x at 824-25.  Because the Court has dismissed all claims against Defendant Jackson, he is **DISMISSED.**

### D. Inadequate access to inadequate law library

Plaintiff asserts that the policy of the prison only allows two hours of research per week unless a court order dictates otherwise or if the research is to be conducted within 30 days of a hearing.  (*Id.* at 41.)  On August 24, 2009, Plaintiff wrote Defendant Edwards requesting additional library time.  (*Id.*)  Plaintiff's request was denied.  (*Id.*)  Plaintiff alleges he lost library time because of a transfer to Coffee Correctional Facility, time in segregation, and medical appointments.  (*Id.* at 42.)

Further, Plaintiff alleges that there are no Shepherd citation resources, typewriters, or copy services in the library.  (*Id.*)  He claims that law books are

considered contraband and are confiscated if outside of the library.  (*Id.*)  Plaintiff claims that he wrote letters to Defendants Tillman and Christian, but received no response.  (*Id.*)  Plaintiff also wrote to Defendant Tatum, but received no response.  (*Id.* at 42-43.)

The Court construes the above allegations as intended to assert (1) a claim that Plaintiff was denied proper access to the courts by being denied proper research facilities, (2) a claim that Plaintiff was improperly transferred, and (3) claims against Defendants Tillman, Christian, and Tatum for failure to respond to his letters.  For reasons discussed at length above and in Judge Langstaff's Recommendation, those claims are **DISMISSED.**  Because no further claims remain against Defendants Tillman and Christian, those Defendants are **DISMISSED.**

### III.    Conclusion

The Court agrees with Judge Langstaff's recommendations regarding the procedural posture of this case.  Accordingly, the Court's March 14, 2011 Order (Doc. 96) and June 2, 2011 Order (Doc. 99) are **VACATED.**  Also, the Judgment entered on April 26, 2012 (Doc. 106) is **VACATED.**  All Motions to Dismiss entered prior to the Eleventh Circuit's remand (Docs. 35, 64, 93) are **DENIED AS MOOT.**  Additionally, the Court reviewed the additional complaints submitted by Plaintiff on January 29, 2013.  (*See* Doc. 115.)  The issues raised therein have been properly addressed and dispensed of by the Court.

 "[W]here a more carefully drafted *pro se* complaint might state a claim the 'plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.' "  *See Bettencourt v. Owens*, No. 11-15036, 2013 WL 5450978, *4 (11th Cir. Oct. 2, 2013) (citing *Bank v. Pitt*, 928 F.3d 1108, 1112

(11th Cir. 1991)).  The Eleventh Circuit "place[s] a heavy thumb on the scale in favor of" giving *pro se* litigants the opportunity to amend.  *Id.*  The decision should be made in light of "the purpose of pleading[, which] is to facilitate a proper decision on the merits." *Id.* (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).

Based on the foregoing, the Court finds the following Defendants should be **DISMISSED WITH PREJUDICE:**   Defendants Ammons (grievances), Perdue (letters), Baker (letters), Thompson (grievances), Georgia Board of Parons and Paroles (denial of parole), Buckner (denial of parole), Keller (denial of parole), Hammonds (denial of parole), Nix (denial of parole), Hunt (denial of parole), Allen (grievances), Nobles (visitation), Nelson (grievances), Cross (grievances), Christian (grievances), Medical College of Georgia (inadequate medical care), Tim Jones (letters), Sittnick (grievances), Saad (inadequate medical care), Hutto (letters), Counselor Brown (grievances), Tillman (grievances), Clyde (denial of food), and Hatcher (grievances). The Court dismisses these claims with prejudice because Plaintiff has not asserted any facts that would suggest any conceivable possibility that amendment to his complaint would result in the proper statement of a claim against those Defendants.  The Court finds the following Defendants should be **DISMISSED WITHOUT PREJUDICE:** Defendants Owens (prison conditions), Donaldson (prison conditions), Morales (access to courts, etc.), Ayers (inadequate medical care), and Jackson (access to courts).

The following claims remain:  (1) Retaliation claim against Defendant Tatum, (2) Denial of visitation claim against Defendant Keith Jones, (3) Deliberate indifference claim against Defendant Smith, (4) Deliberate indifference claim against Defendant Nurse Brown, (5) Deliberate indifference claim against Defendant Satterfield, (6) Denial of visitation claim against Defendant Dedra Edwards, (7) Deliberate indifference claim

against Defendant Henderson, (8) Retaliation claim against Defendant Johnson, and (9) Retaliation claim against Defendant Tarver.

United States Magistrate Judge Thomas Q. Langstaff's April 10, 2013 Order and Recommendation (Doc. 117) is **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein, together with the reasons stated and conclusions reached herein.

**SO ORDERED**, this  16th  day of December, 2013.


/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**